1   SEYFARTH SHAW LLP
    John Yslas (SBN 187324)
2   E-mail:  jyslas@seyfarth.com
    601 South Figueroa Street, Suite 3300
3   Los Angeles, California 90017-5793
    Telephone:   (213) 270-9600
4   Facsimile:    (213) 270-9601

5   SEYFARTH SHAW LLP
    Francesca L. Hunter (SBN 327571)
6   fhunter@seyfarth.com
    2029 Century Park East, Suite 3500
7   Los Angeles, California 90067
    Telephone:  (310) 277-7200
8   Facsimile:  (310) 201-5219

9
    Attorneys for Defendants
10  ExamWorks, LLC, ExamWorks Review Services,
    LLC, and IME Resources, LLC
11

12

13              UNITED STATES DISTRICT COURT

14            EASTERN DISTRICT OF CALIFORNIA

15

16
    JONI STEVENS, an individual,              Case No.
17
                Plaintiff,                     (Shasta County Superior Court Case No.
18                                             197549)
          v.
19                                            **DEFENDANTS EXAMWORKS,**
    EXAMWORKS, LLC, a Delaware limited        **LLC, EXAMWORKS REVIEW**
20  liability company;                         **SERVICES, LLC, AND IME**
    EXAMWORKS REVIEW SERVICES,                **RESOURCES, LLC'S NOTICE OF**
21  LLC, a Delaware limited liability company; **REMOVAL OF CIVIL ACTION TO**
    IME RESOURCES, LLC, a Delaware            **UNITED STATES DISTRICT**
22  limited liability compare; and            **COURT PURSUANT TO**
    Does 1-10,                                 **DIVERSITY OF CITIZENSHIP**
23                                            **JURISDICTION [28 U.S.C.**
                Defendants.                    **SECTIONS 1332 AND 1441]**
24
                                              Complaint Filed:     June 14, 2021
25                                            Trial Date:          May 17, 2022

26

27

28

                    DEFENDANTS' NOTICE OF REMOVAL

73136922v.1

# TABLE OF CONTENTS

I.    BACKGROUND ........................................................................................ 1

II.   TIMELINESS OF REMOVAL ............................................................... 2

III.  JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP ............ 2

IV.   VENUE .................................................................................................. 13

V.    NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT ....... 13

VI.   PRAYER FOR REMOVAL .................................................................. 14

1
2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**Federal Cases**

5
6

*3123 SMB LLC v. Horn*,
   800 F.3d 461 (9th Cir. 2018) .................................................................4, 5, 6

7
8

*Abrego v. The Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006) .................................................................7

9
10

*Armstrong v. Church of Scientology Int'l*,
   243 F.3d 546 (9th Cir. 2000) .................................................................3

11

*Behrazfar v. Unisys Corp.*,
   687 F. Supp. 2d 999 (C.D. Cal. 2009) ...................................................7

12
13

*Boon v. Allstate Ins. Co.*,
   229 F. Supp. 2d 1016 (C.D. Cal. 2002) .................................................3

14
15

*Cassino v. Reichhold Chemicals, Inc.*,
   817 F.2d 1338 (9th Cir. 1997) ...............................................................8

16
17

*Conrad Assocs. v. Hartford Accident & Indemnity Co.*,
   994 F. Supp. 1196 (N.D. Cal. 1998)......................................................8

18
19

*Crum v. Circus Circuit Enters.*,
   231 F.3d 1129 (9th Cir. 2000) ...............................................................9

20
21

*Danjaq, S.A. v. Pathe Commc'ns Corp.*,
   979 F.2d 772 (9th Cir. 1992) .................................................................6

22
23

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   135 S. Ct. 547 (2014) ............................................................................7

24

*Davenport v. Mutual Benefit Health & Accident Ass'n*,
   325 F.2d 785 (9th Cir. 1963) ...........................................................7, 11

25
26

*Davis v. HSBC Bank Nevada, N.A.*,
   557 F.3d 1026 (9th Cir. 2009) ...............................................................4

27
28

*Fritsch v. Swift Transp.*,
   899 F. 3d 785 (9th Cir. 2018) ...............................................................10

iii

73136922v.1

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ...................................................................7, 10

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) .............................................................................7

*Glenn-Davis v. City of Oakland*,
    No. C 02-2257 SI, 2008 WL 410239 (N.D. Cal. 2008) ......................................9

*Guglielmino v. McKee Foods Corp.*,
    506 F.3d 696 (9th Cir. 2007) .............................................................................7

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)..........................................................................................4, 5

*James v. Childtime Childcare, Inc.*,
    No. Civ. S-06-2676 DFL DAD, 2007 WL 1589543 (E.D. Cal. June 1,
    2007) ..................................................................................................................8

*Johnson v. Columbia Props. Anchorage, L.P.*,
    437 F.3d 894 (9th Cir. 2006) ..........................................................................3, 5

*Johnson v. SmithKline Beecham Corp.*,
    724 F.3d 337 (3d Cir. 2013) .........................................................................4, 5, 6

*Juarez v. Autozone Stores, Inc.*,
    No. 08cv417—L (BLM), 2011 WL 1532070 (S.D. Cal., November 18,
    2014) ................................................................................................................11

*Kantor v. Wellesley Galleries, Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) ...........................................................................3

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) .............................................................................6

*Rippee v. Boston Market Corp.*,
    408 F. Supp. 2d 982 (S.D. Cal. 2005)................................................................7

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir. 1996) .............................................................................6

*Secru v. Laboratory Corp. of America*,
    No. 3:09—cv-0619—LRH—RAM, 2009 WL 3755763 (D. Nev. Nov. 9,
    2009) ..................................................................................................................8

iv

*Thompson v. Big Lots Stores, Inc.*,
  No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261 (E.D. Cal. 2017)...............9, 11

*Traxler v. Multnomah Cty.*,
  569 F.3d 1007 (9th Cir. 2010) ...........................................................9

*Valdez v. Allstate Ins. Co.*,
  372 F.3d 1115 (9th Cir. 2004) ...........................................................7

*Ward v. Cadbury Schweppes Bottling Grp.*,
  09CV03279(DMG), 2011 WL 7447633 (C.D. Cal)...........................................10

*Washington v. Havensa LLC*,
  652 F.3d 340 (3d Cir. 2011) .............................................................3

**State Cases**

*Ackerman v. Western Elec. Co.*,
  Inc., 643 F. Supp. 836, 856 (N.D. Cal. 1986)...........................................9

*Davis v. Robert Bosch Tool Corp.*,
  No. B185408, 2007 WL 2014301 (Cal. Ct. App. 2d Dist. July 13, 2007).........11

*Horsford v. Bd. of Trs. of Cal. State Univ.*,
  132 Cal. App. 4th 359 (2005) ..........................................................10

*Roby v. McKesson Corp.*,
  47 Cal. 4th 686 (2009) ................................................................11

**Federal Statutes**

28 U.S.C. § 1332(c) ....................................................................4

28 U.S.C. § 1332(c)(1)................................................................4, 6

28 U.S.C. § 1446(b) ....................................................................2

28 United States Code §§ 84(c)(2), 1441, and 1446(a) .........................................12

28 United States Code § 1332..............................................................1

28 United States Code § 1332(a) .......................................................7, 11

28 United States Code § 1332(a)(1)....................................................2, 6, 11

28 United States Code § 1441(a) .................................................1, 2, 6, 12

DEFENDANTS' NOTICE OF REMOVAL

28 United States Code § 1441(b) ............................................................1, 6

28 United States Code § 1446(d) ...............................................................12

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ....................................................2

Cal. Lab. Code § 226.7 ...............................................................................1

Cal. Lab. Code § 512 ..................................................................................1

Cal. Labor Code § 98.6 ..............................................................................1

Cal. Labor Code § 201 ............................................................................1, 2

Cal. Labor Code § 202 ................................................................................2

Cal. Labor Code § 203 ................................................................................2

Cal. Labor Code §§ 226 *et seq.* ..................................................................1

Cal. Labor Code § 233 ................................................................................1

Cal. Labor Code § 234 ................................................................................1

Cal. Labor Code § 246.5 .............................................................................1

Cal. Labor Code §§ 510, 1194 ....................................................................1

Cal. Labor Code § 1102.5 ...........................................................................1

Cal. Labor Code § 1102.6 ...........................................................................1

Cal. Labor Code § 1182.12 .........................................................................1

Cal. Labor Code § 1194 ..............................................................................1

Cal. Labor Code § 1194.2 ...........................................................................1

Cal. Labor Code § 1197 ..............................................................................1

California Family Rights Act, Gov't Code §§ 12945.2 *et. Seq.* ...................1

California Gov't Code §§ 12940 *et seq.* ......................................................1

California Gov't Code § 12965 ...................................................................10

DEFENDANTS' NOTICE OF REMOVAL

## Other Authorities

*Aboulafia v. GACN Inc.*,
   No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct.)................................9

*Crawford v. DIRECTV, Inc.*,
   No. BC417507, 2010 WL 5383296 (Los Angeles County Sup. Ct.)................11

*Denenberg v. Cal. Dep't of Transp.*,
   No. GIC836582, 2006 WL 5305734 (San Diego County Sup. Ct.)..................11

*Leimandt v. Mega RV Corp.*,
   No. 30-2010-00388086, 2011 WL 2912831 (Orange County Sup. Ct.)............10

*Silverman v. Stuart F. Cooper Inc.*,
   No. BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct.)................................9

*Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*,
   No. BC484335, 2013 WL 7852947 (Los Angeles Sup. Ct.)................................9

*Welch v. Ivy Hill Corp.*,
   No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct.)..............................10

DEFENDANTS' NOTICE OF REMOVAL

73136922v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF JONI STEVENS, AND HER ATTORNEYS OF RECORD:**

Please take notice that Defendants EXAMWORKS, LLC ("ExamWorks"), ExamWorks Review Services, LLC ("ExamWorks Review Services"), and IME RESOURCES, LLC ("IME") (collectively "Defendants") hereby file this Notice of Removal pursuant to 28 United States Code sections 1332 and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of Shasta, to the United States District Court for the Eastern District of California, and states that removal is proper for the following reasons:

## I.    BACKGROUND

1.    On June 14, 2021, Plaintiff Joni Stevens ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Shasta, entitled, *Joni Stevens, an individual v. ExamWorks, LLC, a Delaware limited liability company; ExamWorks Review Services, LLC, a Delaware limited liability company; IME Resources LLC a Delaware limited liability company; and DOES 1 through 10, inclusive*, designated as Case No. 197549. In the Complaint, Plaintiff alleges nine causes of action against Defendants: (1) Gender Discrimination in Violation of FEHA; (2) Age Discrimination in Violation of FEHA; (3) Retaliation in Violation of FEHA; (4) Failure to Prevent Discrimination and Harassment; (5) Violation of the California Equal Pay Act; (6) Retaliation in Violation of the California Equal Pay Act; (7) Retaliation in Violation of Labor Code § 1102.5; (8) Wrongful Termination in Violation of Public Policy; and (9) Unfair Business Practices.

2.    On June 16, 2021, Plaintiff served Defendants with the Summons and Complaint. True and correct copies of the Complaint served on Defendants are attached as Exhibit 1 (hereinafter "Compl.").

3.  On July 16, 2021, Defendants submitted to be filed, their Answer to Plaintiff's Complaint in the Superior Court for the County of Shasta, prior to filing this Notice of Removal. See Yslas Decl. ¶ 4, Exhibit 2 (Defendants' Answer to Plaintiff's Complaint).

4.  Exhibits 1 and 2 constitute all of the pleadings served on Defendants and/or filed by Defendants in the state court action prior to filing this Notice of Removal. (Declaration of John Yslas ["Yslas Dec."] ¶ 3.) Aside from a Settlement Conference scheduled for March 21, 2022 and Trial scheduled to begin on May 17, 2022, there are no pending hearings currently scheduled in the County of Shasta Superior Court in the state court action. (Yslas Dec. ¶ 3.)

## II.    TIMELINESS OF REMOVAL

5.  This notice of removal is timely as it is filed less than one year from the date this action was commenced and within thirty days of the service of the Summons and Complaint upon ExamWorks and IME, the moving defendants. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint). (Exhibits 1.)

## III.   JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

6.  The Court has original jurisdiction of this action under 28 United States Code section 1332(a)(1). As set forth below, this action is removable pursuant to 28 United States Code section 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.  **Plaintiff's Citizenship**. "An individual is a citizen of the state in which he is domiciled ...." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. *Washington v. Havensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011).

DEFENDANTS' NOTICE OF REMOVAL

8.    Plaintiff's Complaint asserts that she resides in California: "Plaintiff Joni Stevens is a resident of the County of Shasta in the State of California." (Compl. ¶ 8.) Throughout Plaintiff's employment with ExamWorks, from May 16, 2011 through February 19, 2021, Plaintiff worked at an office located in Redding, California. (Declaration of Kathrin Criveau ["Criveau Dec."] ¶ 3.) Additional evidence that Plaintiff resides in California can be found in the fact that, throughout her employment with ExamWorks, Plaintiff's home address was within the State of California. (Criveau Dec. ¶ 4.) There are no documents in Plaintiff's personnel records to suggest in any way that she is currently, or during the period of her employment was, a resident or citizen of any state other than California. (*Id.*) Plaintiff's residence in California is prima facie evidence of her domicile. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (a party's residence is prima facie evidence of her domicile). By asserting her California residence in her Complaint, and providing her California residence to her former employer, Plaintiff has demonstrated "an intent to remain" in California, establishing Plaintiff's domicile in California. Plaintiff therefore, is, and at all times since the commencement of this action has been, a citizen of the State of California.

9.    **Defendants' Citizenship.** ExamWorks, ExamWorks Review Services, and IME are now, and have been ever since this action commenced, citizens of a state other than California. ExamWorks, ExamWorks Review Services, and IME are limited liability companies (Criveau Dec. ¶ ¶ 6-7; 10.) ExamWorks has one member: ExamWorks Group, Inc.; ExamWorks Review Services has one member: ExamWorks LLC; and IME has one member: ExamWorks, LLC. (*Id.*)

10.    ExamWorks, LLC is a limited liability company that at all relevant times during this litigation was organized and existing under the laws of the State of Delaware. (Criveau Dec. ¶ 6.) ExamWorks' sole member is ExamWorks Group, Inc. (*Id.*)

11.    ExamWorks Review Services, LLC is a limited liability company that at all relevant times during this litigation was organized and existing under the laws of the State

DEFENDANTS' NOTICE OF REMOVAL

73136922v.1

of Delaware. (Criveau Dec. ¶ 10.) ExamWorks Review Services' sole member is ExamWorks, LLC. (*Id*.)

12.    IME Resources, LLC is a limited liability company that at all relevant times during this litigation was organized and existing under the laws of the State of Delaware. (Criveau Dec. ¶ 7.)  IME's sole member is ExamWorks, LLC. (*Id*.)

13.    A limited liability company is a citizen of all of the states of which its members are citizens. *See Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006)("like a partnership, an LLC is a citizen of every state of which its owners/members are citizens"). Thus, ExamWorks Review Services and IME are citizens of the State of Delaware.

14.    ExamWorks, LLC's sole member is ExamWorks Group, Inc. ExamWorks Group, Inc. is now, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1). "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009)("[A] corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its `principal place of business.'"). ExamWorks Group, Inc. is a corporation that at all relevant times during this litigation was organized and existing under the laws of the State of Delaware. (Criveau Dec. ¶ 8.) Thus, ExamWorks Group, Inc. is a citizen of the State of Delaware, making ExamWorks, LLC a citizen of the State of Delaware.

15.    Typically, one determines a corporation's principal place of business with the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, a corporation's principal place of business is where its "officers direct, control and coordinate the corporation's activities." *Id.* at 92. A corporation typically directs and coordinates its activities from its headquarters. *Id.* However, ExamWorks Group, Inc. is a holding company, which has no employees and conducts no operations. (Criveau Dec. ¶ 8.) A holding company "engages in little activity, so there is little to direct, control, or

DEFENDANTS' NOTICE OF REMOVAL

coordinate." *3123 SMB LLC v. Horn,* 800 F.3d 461, 465 (9th Cir. 2018). The purpose of a holding company is passive in nature—holding interest in other companies. Accordingly, the determination of a holding company's citizenship must involve consideration of different factors than the analysis of a normal corporation's citizenship.

16.    A corporation with "quite limited" activities, "consist[ing] primarily of owning its interest in [a limited liability company]" has its principal place of business in the state wherein the corporation holds board meetings. *3123 SMB LLC*, *supra*, 800 F.3d at 468 (holding that "a recently-formed holding company's principal place of business is the place where it has its board meetings."); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 342 (3d Cir. 2013) (the Third Circuit held that the holding company's principal place of business was the state wherein the holding company's three-member board of directors held quarterly and special board meetings).

17.    While Hertz discussed in dictum that a corporation's nerve center is "normally . . . not simply an office where the corporation holds its board meetings," both the Ninth and Third Circuits determined this conclusion is inapplicable to holding companies. *See Hertz*, 559 U.S. at 93. The Third Circuit explained its reasoning in *Johnson*:

> [T]he kind of board meetings denigrated in Hertz were being considered in the context of a case involving a sprawling operating company, with extensive activities carried out by 11,230 employees at facilities in 44 states. **For a holding company ..., relatively short, quarterly board meetings may well be all that is required to direct and control the company's limited work.** [T]he board generally conducts three tasks at each meeting: (1) it approves or corrects the minutes from the previous meetings, (2) it reviews the company's financial statements with [an] accountant . . ., and (3) it addresses any other business required to come before the meeting, such as authorizing agents to sign documents, making changes to the officers, paying a dividend, or occasionally, restructuring the company's holdings. **Generally, such business is straightforward and takes little time, yet it constitutes [the holding company's] primary activity: managing its assets. The location of board meetings is therefore a more significant jurisdictional fact here than it was in Hertz.**

73136922v.1

*Johnson*, 724 F.3d at 354 (citation, and internal quotation marks omitted). This rationale, which the Ninth Circuit adopted in *3123 SMB LLC*, 880 F.3d at 466-67, takes into account the limited activities of a holding company.

18.    However, if a holding company's business is so limited that board meetings are not held or necessary, other factors that show where the corporation is directed from must be assessed to determine the holding company's citizenship. *3123 SMB LLC*, 880 F.3d at 468. The Ninth Circuit has provided little guidance on what these other factors might be, but in *3123 SMB LLC*, the Court generally rejected the idea that a holding company's principal place of business be determined by the state in which its officers reside, as "[c]orporations aren't usually directed from their managers' homes." *3123 SMB LLC*, 880 F.3d at 469.

19.    Here, ExamWorks Group, Inc. is one such holding company whose business is so limited that board meetings for this entity are not necessary. (Criveau Dec. ¶ 9.) Instead, when necessary, decisions are made by unanimous written consent of the two board directors, both of whom reside in Florida. (*Id.*) Thus, ExamWorks Group, Inc.'s overall executive and administrative functions are not found in the State of California. (*Id.*)

20.    Several courts, including the Ninth Circuit, have rejected the idea that a holding company's nerve center is where the subsidiary limited liability company's management is based, because that "ignores the well-established rule that a parent corporation maintains separate citizenship from a subsidiary unless it has exerted such an overwhelming level of control over the subsidiary that the two companies do not retain separate corporate identities." *3123 SMB LLC*, 880 F.3d at 467; *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775 (9th Cir. 1992) ("[T]he citizenship of a parent is distinct from its subsidiary where . . . there is no evidence of an alter ego relationship."); see also Johnson, 724 F.3d at 351.

21.    Consequently, because ExamWorks Group, Inc. does not hold board meetings, it does not maintain office space, and there is no other meaningful evidence of internal corporate governance, ExamWorks Group, Inc.'s principal place of business must

DEFENDANTS' NOTICE OF REMOVAL

be determined based on the state under whose laws it is incorporated. Accordingly, ExamWorks Group, Inc. is a citizen of the State of Delaware and no other states. It follows that AMR and IME are also citizens of the State of Delaware.

22.    Even assuming arguendo that the residence of ExamWorks Group, Inc.'s board directors should factor into the corporate citizenship analysis, those board directors reside in Florida, not California.

23.    Accordingly, for purposes of diversity of citizenship, ExamWorks and IME are not citizens of the State of California. Thus, the requisite diversity of citizenship exists. See 28 U.S.C. § 1332(c)(1).

24.    Further, in compliance with 28 United States Code section 1441(b), "none of the parties in interest properly joined and served as defendants is a citizen of the State in which [this] action is brought." Pursuant to 28 United States Code section 1441(a), the citizenship of defendants sued under fictitious names shall be disregarded. The inclusion of "Doe" defendants in Plaintiff's state court complaint has no effect on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441 (a) (stating that for purposes of removal, the citizenship of defendants sued under fictitious names shall be disregarded). In determining whether diversity of citizenship exists, only the named defendants are considered. *Id.*

25.    **Amount in Controversy**. While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement for diversity jurisdiction is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. 28 U.S.C. § 1332(a)(1); *see Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (where a plaintiff's state court complaint does not specify a particular amount of damages, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds the requisite threshold).

26.    Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. *Abrego v. The Dow Chem. Co.*,

DEFENDANTS' NOTICE OF REMOVAL

443 F.3d 676, 683 (9th Cir. 2006); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). Further, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that a court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may set forth underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Id.*; *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566¬67 (9th Cir. 1992).

27.    As the Supreme Court has explained, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *see also Valdez*, 372 F.3d at 1117 ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). Defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is "what is in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

28.    In determining whether a complaint meets the $75,000 threshold under 28 United States Code section 1332(a), the Court must consider a plaintiff's alleged aggregate general damages, special damages, punitive damages, and attorneys' fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees may be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be taken into account in determining amount in controversy where recoverable under state law); *Conrad Assocs. v. Hartford*

*Accident & Indemnity Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages, including attorneys' fees and punitive damages).

29.    The calculations supporting the amount in controversy are based on Plaintiff's potential recovery pursuant to the claims alleged in the Complaint, assuming, without any admission, the truth of any of the allegations, and assuming liability (which is disputed) based on Plaintiff's theory of recovery.

30.    **Economic Damages**. In her Complaint, Plaintiff seeks to recover special damages according to proof at trial, for lost earnings, benefits, and/or out-of-pocket expense. (Compl. ¶¶ 64, 73, 82, 92, 108, 113, 120, Prayer for Relief, ¶ A.) Plaintiff alleges she worked as an account executive and then had been promoted to Director of Sales. (Compl ¶ 16.) Plaintiff was terminated on February 19, 2021. (Compl. ¶ 8; Criveau Decl. ¶ 3.).) Prior to her termination, Plaintiff earned an annual salary of $72,367.36 and would have been commission eligible. (Criveau Decl. ¶ 5.) Given that Plaintiff alleges that she was wrongfully terminated in February 2021, Plaintiff has already incurred at least $30,153.05; i.e., (approximately $6,030.61 monthly salary X 5 months (February 2021 to July 2021)).

31.    Assuming that this matter goes to trial in this Federal Court on or around December 1, 2022, and Plaintiff remains unemployed for a total of 21 months (February 2021 to December 2022), Plaintiff's lost income would equal $126,642.81 ($6,030.61 monthly salary X 21 months (February 2021 to December 2022)).

32.    In addition to back pay, a plaintiff who prevails on a claim for wrongful termination or discriminatory discharge of employment may be entitled to either reinstatement or an award of "front pay" in lieu of reinstatement. *See, e.g., Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1997) (stating that a court has discretion to award front pay in lieu of reinstatement); *Secru v. Laboratory Corp. of America*, No. 3:09—cv-0619—LRH—RAM, 2009 WL 3755763, at * 2, n.3 (D. Nev. Nov. 9, 2009) (future lost wages alone can satisfy amount in controversy); *James v. Childtime*

9

*Childcare, Inc.*, No. Civ. S-06-2676 DFL DAD, 2007 WL 1589543, at *2, n.1 (E.D. Cal. June 1, 2007) (while courts evaluate the amount in controversy at the time of removal, future lost wages are properly considered in that calculation); *see also Crum v. Circus Circuit Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (future damages are properly considered in determining amount in controversy).

33.    An award of three years' front pay would entitle Plaintiff to more than $217,102.08 in additional recovery. *See Traxler v. Multnomah Cty.*, 569 F.3d 1007, 1015 (9th Cir. 2010) (upholding district court's decision to award nearly four years' front pay in a wrongful termination suit); see also *Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, *4 (N.D. Cal. 2008) (finding three years of front pay "appropriate" in a discrimination suit); *Ackerman v. Western Elec. Co.*, Inc., 643 F. Supp. 836, 856 (N.D. Cal. 1986) (same). Thus, Plaintiff's allegations of lost wages alone exceed $343,744.89.

34.    Emotional Distress Damages. In addition to compensatory damages, Plaintiff claims emotional distress due to severe embarrassment, humiliation, and mental and emotional distress and discomfort. (Compl. ¶¶ 65, 74, 83, 93, 114, 121.) In *Thompson v. Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261, *4 (E.D. Cal. 2017), the Eastern District of California made clear that "[i]n determining the amount in controversy, a court may assess likely emotional distress damages by reference to damages awards in similar discrimination cases." Applying that rule, the Thompson court found the defendant met its burden of showing that damages awards for emotional distress in analogous cases are often substantial, where the defendant pointed to a jury award of $122,000 in emotional distress damages to an employee who sued for pregnancy discrimination and wrongful termination. *Id.*

35.    In fact, such damages may exceed $122,000. A review of jury verdicts in California demonstrates as much. *See, e.g., Silverman v. Stuart F. Cooper Inc.*, No. BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct.) (jury awarded $157,001 for emotional distress damages in discrimination case); *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, No. BC484335, 2013 WL 7852947 (Los Angeles Sup. Ct.) (award of

$1,250,000 for pain and suffering to employee in violation of the CFRA and disability discrimination action); *Aboulafia v. GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct.) (pain and suffering awards of $250,000, $250,000, $250,000, and $250,267 to four employees in discrimination action); *Ward v. Cadbury Schweppes Bottling Grp.*, 09CV03279(DMG), 2011 WL 7447633 (C.D. Cal) (jury award $5,600,000 in non-economic damages in discrimination and retaliation case); *Welch v. Ivy Hill Corp.*, No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and suffering to employee in discrimination action); *Leimandt v. Mega RV Corp.*, No. 30-2010-00388086, 2011 WL 2912831 (Orange County Sup. Ct.) (jury awarded $385,000 in pain and suffering to employee in an discrimination case). These awards demonstrate that, for diversity purposes, the value of Plaintiff's alleged emotional distress damages exceeds the $75,000 amount in controversy requirement.

36.    **Attorneys' Fees**. Plaintiff claims statutory entitlement to attorneys' fees. (Compl. ¶¶ 66, 75, 84, 94, 102, 116, 128, Prayer for Relief ¶ E.) Attorneys' fees are properly considered in calculating the amount-in-controversy for purposes of removal on grounds of diversity jurisdiction. *Galt*, 142 F.3d at 1156 (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). Under California Government Code section 12965, the court in its discretion may award fees and costs to the "prevailing party" in FEHA actions. Although the statute provides that the court "may" award fees, cases hold that a prevailing plaintiff is entitled to fees "absent circumstances that would render the award unjust." *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005). Here, Plaintiff asserts four FEHA claims against Defendants in the Complaint. (Compl. First through Fourth Causes of Action.)

37.    The amount of attorneys' fees for purposes of amount in controversy calculations is the expected reasonable attorneys' fees **through trial**. *Fritsch v. Swift Transp.*, 899 F. 3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy

DEFENDANTS' NOTICE OF REMOVAL

requirement is met."). Defendants anticipate that the Parties will propound and respond to written discovery, that depositions will be taken in this case, and that Defendants will file a Motion for Summary Judgment. (Yslas Dec. ¶ 4.) Here, if Plaintiff prevails, she could be entitled to an award of attorneys' fees that alone is "more likely than not" to exceed $75,000, as is typical in discrimination and retaliation cases. Indeed, courts have awarded attorneys' fees in excess of $75,000 in cases involving discrimination. *See, e.g., Crawford v. DIRECTV, Inc.*, No. BC417507, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorneys' fee award of $159,762.50 in alleged discrimination action); *Davis v. Robert Bosch Tool Corp.*, No. B185408, 2007 WL 2014301, *9 (Cal. Ct. App. 2d Dist. July 13, 2007) (individual plaintiff sought $1.6 million in fees); *Denenberg v. Cal. Dep't of Transp.*, No. GIC836582, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorneys' fees award of $490,000 for claims in a discrimination case).

38. **Punitive Damages**. Plaintiff also seeks punitive damages in the Complaint. (Compl., ¶¶ 67, 76, 85, 95, 115, 122, and Prayer for Relief, ¶ C.) The Court must consider Plaintiff's request for punitive damages in determining the amount in controversy. *Davenport v. Mutual Benefit Health and Accident Ass 'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law). "Because plaintiff brings a claim under FEHA, and [p]unitive damages are recoverable for FEHA violations,' punitive damages may be included in the amount in controversy here." *Thompson*, 2017 WL 590261 at *4.

39. Courts have affirmed jury verdicts exceeding $1 million in punitive damages in alleged discrimination cases. *See, e.g., Juarez v. Autozone Stores, Inc.*, No. 08cv417—L (BLM), 2011 WL 1532070 (S.D. Cal., November 18, 2014) ($185 million verdict for plaintiff in pregnancy discrimination case); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) (holding that a punitive damage award of $1.9 million equal to the compensatory damage award was appropriate in disability case).

40. In sum, Plaintiff's aggregated recovery on her claims, including lost wages, emotional distress damages, attorneys' fees, and punitive damages, satisfies the $75,000

73136922v.1

jurisdictional threshold. While Defendants deny any liability as to Plaintiff's claims, it is "more likely than not" that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as required by 28 United States Code section 1332(a).

41.    Because diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy between the Parties exceeds $75,000, this Court has original jurisdiction of the action pursuant to 28 United States Code section 1332(a)(1), and removal is proper.

## IV.    VENUE

42.    Venue lies in the United States District Court for the Eastern District of California, pursuant to 28 United States Code sections 84(c)(2), 1441, and 1446(a) because this action originally was brought in the Superior Court of the State of California, County of Shasta. In addition, the action arose in the County of Shasta because the location where Plaintiff worked is in Redding, California. (Criveau Decl. ¶ 3.) Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V.    NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT

43.    Pursuant to 28 United States Code section 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Shasta.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## VI.    PRAYER FOR REMOVAL

2

44.    Wherefore, Defendants pray that this civil action be removed from the

3
Superior Court of the State of California, County of Shasta to the United States District

4
Court for the Eastern District of California.

5

6

DATED: July 16, 2021                              Respectfully submitted,

7

SEYFARTH SHAW LLP

8

9

10
By: _____

11
John Yslas
Francesca L. Hunter

12
Attorneys for Defendants,
ExamWorks, LLC, ExamWorks

13
Review Services, LLC, and IME
Resources, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL

73136922v.1

# EXHIBIT 1

SUM-100

## SUMMONS
## (CITACION JUDICIAL)



| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ExamWorks, LLC., a Delaware limited liability company; ExamWorks Review
Services, LLC, a Delaware limited liability company; IME Resources, LLC, a
Delaware limited liability company; and Does 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Joni Stevens, an individual,

**FILED**

JUN 14 2021

CLERK OF THE SUPERIOR COURT
BY: B. PACKHAM, DEPUTY CLERK

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  County of Shasta, Main Courthouse | CASE NUMBER:<br>*(Número del Caso):*  197549 |
|---|---|

1500 Court Street
Redding, CA 96001

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
KING & SIEGEL LLP, 724 S. Spring Street, Suite 201, Los Angeles, CA 90014; 213-465-4802

| DATE:<br>*(Fecha)*  JUN 14 2021 | Clerk, by<br>*(Secretario)*  B. PACKHAM | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* IME Resources, LLC, a Delaware limited liability company

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Limited Liability Company - California Corporation Code 17061
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100  [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|



FILED

JUN 14 2021

CLERK OF THE SUPERIOR COURT
BY: B. PACKHAM, DEPUTY CLERK

1  Julian Burns King (Bar No. 298617)
   julian@kingsiegel.com
2  Elliot J. Siegel (Bar No. 286798)
   elliot@kingsiegel.com
3  Robert J. King (Bar No. 302545)
   robert@kingsiegel.com
4  **KING & SIEGEL LLP**
5  724 S. Spring Street, Suite 201
6  Los Angeles, California 90014
   tel:  (213) 465-4802
7  fax:  (213) 465-4803

8
   Attorneys for Plaintiffs
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        FOR THE COUNTY OF SHASTA

12

13

14  **Joni Stevens**, an individual,            CASE NO.   **197549**

15                  Plaintiff,                   **COMPLAINT FOR:**

16          vs.
                                                1) **Gender Discrimination in Violation**
17  **ExamWorks, LLC.**, a Delaware limited         **of FEHA;**
18  liability company;                          2) **Age Discrimination in Violation of**
    **ExamWorks Review Services, LLC,** a           **FEHA;**
19  Delaware limited liability company;         3) **Retaliation in Violation of FEHA;**
20  **IME Resources, LLC,** a Delaware limited  4) **Failure to Prevent Discrimination**
    liability company; and                         **and Harassment;**
21  **Does 1-10**, inclusive,                   5) **Violation of the California Equal Pay**
                                                   **Act;**
22                  Defendants.                 6) **Retaliation in Violation of the Cali-**
23                                                 **fornia Equal Pay Act;**
                                                7) **Retaliation in Violation of Labor**
24                                                 **Code § 1102.5;**
25                                              8) **Wrongful Termination in Violation**
                                                   **of Public Policy**
26                                              9) **Unfair Business Practices**

27
                                                <u>**Demand for Jury Trial**</u>
28

1    Plaintiff Joni Stevens ("Plaintiff") hereby brings this action against Defendants Ex-

2  amWorks, LLC, and ExamWorks Review Services, LLC, (collectively "ExamWorks" or the

3  "Company") and alleges as follows by and through her counsel of record:

4                       **INTRODUCTION**

5      1.    Plaintiff Joni Stevens is a 55-year-old woman with more than 35 years of expe-

6  rience as a successful saleswoman and supervisor. She excelled at her job throughout her

7  nearly 10 years working as a Director of Sales for Defendant ExamWorks, receiving the high-

8  est possible overall performance grades in each of her annual reviews. She successfully lead

9  a team of approximately 532 salespeople and contributed significantly towards her business

10  unit's growth and success.

11     2.    But ExamWorks' mostly-male management did not appreciate Ms. Stevens'

12  contributions. They consistently passed her up for promotions, including by intentionally

13  deceiving her about the availability and desirability of open positions. Meanwhile, Exam-

14  Works' President of Sales, Dave Morrow, installed his male friends in high-up roles at the

15  Company, including positions that internal female candidates—including but not limited to

16  Ms. Stevens—were more qualified for. These men were paid significantly more than Ms.

17  Stevens and her female peers.

18     3.    Ms. Stevens tactfully advocated for herself, continually applying for positions

19  and showcasing her strength and experience to her supervisors. However, once Mr. Mor-

20  row's friends had been promoted into various positions over her, they began the process of

21  icing Ms. Stevens out of the Company. They reassigned her customers to other employees.

22  They changed her commission structure so that, over the long term, her wages would fall by

23  approximately one-third. They changed her reporting structure, took away her direct reports,

24  and hired another Director of Sales to take over her responsibilities.

25     4.    Finally, after over a year of being sidelined and mistreated because of her age

26  and gender, Ms. Stevens complained to Human Resources about gender discrimination, spe-

27  cifically, the "*good boy's club*" that had taken over the Sales arm of the Company. Human

28

1  Resources did nothing in response to this complaint except for encouraging Ms. Stevens to
2  use a week of PTO to get over it.

3      5.    Ms. Stevens was fired on her first day back from PTO, ostensibly because the
4  Company had decided to "*go in a different direction*." Mr. Morrow also commented that she
5  had been taking "*a lot of time off*," referencing the week of earned PTO she used to attempt
6  to recover from over a year of discriminatory treatment.

7      6.    Ms. Stevens' termination was blatantly retaliatory and discriminatory, and Ex-
8  amWorks knew it. They tried to cover their tracks by inducing Ms. Stevens to sign a sever-
9  ance agreement. Cruelly, they dangled the prospect of yet another job within ExamWorks
10 over her head until the offer period on the severance agreement had expired, then rejected
11 her yet again when it was clear she would not waive her rights.

12     7.    This action follows.

## THE PARTIES

14     8.    Plaintiff **Joni Stevens** is a resident of the County of Shasta in the State of Cal-
15 ifornia. Plaintiff worked for Defendants from May 16, 2011, until her termination on February
16 19, 2021. Ms. Stevens is a 55-year-old woman with a long history of success in sales. While
17 serving as the Director of Sales for ExamWorks, LLC on the West Coast she oversaw a team
18 of four or five salespeople.

19     9.    Defendant **ExamWorks, LLC** is a foreign limited liability company organized
20 under the laws of the State of Delaware. Its principal place of business is located 3280
21 Peachtree Road NE, Suite 2625 Atlanta, Georgia 30305. Directly and through its subsidiaries
22 and affiliated entities, ExamWorks provides "independent medical examinations, peer re-
23 views, bill reviews, Medicare compliance, case management, record retrieval, document
24 management and related services."

25     10.   Defendant **ExamWorks Review Services, LLC** is a foreign limited liability
26 company organized under the laws of the State of Delaware. ExamWorks Review Services,
27 LLC has its principal place of business at 1100 Industrial Street, Redding CA 96002.

28

11.    Defendant **IME Resources, LLC** is a foreign limited liability company orga-nized under the laws of the State of Delaware. Its principal place of business is located 3280 Peachtree Road NE, Suite 2625 Atlanta, Georgia 30305.

12.    The true names and capacities of the Defendants named herein as Does 1 through 10, inclusive (hereinafter "Doe Defendants," together with ExamWorks, "Defend-ants"), are unknown to Plaintiff at this time. Accordingly, Plaintiff brings this suit against them by fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff be-lieves that each of the Doe Defendants is a California resident and/or does substantial busi-ness in the State of California. At all relevant times, Does 1 through 10 were acting within the course and scope of their employment and agency with Defendant Defendants. Plaintiff is informed and believes that each Doe Defendant is responsible for the injuries and damages alleged herein. Plaintiff will amend this complaint to reflect Does 1 through 10's true names and capacities when they have been determined.

13.    Except as otherwise noted herein, Defendants participated in the acts alleged herein and/or were the agents, servants, employees, joint-employers, or representatives of the other Defendants. At all times relevant to this complaint, Defendants were acting within the course, scope, and authority of their agency and employment such that the acts of one Defendant are legally attributable to the other Defendants. Defendants, in all respects, acted as employers and/or joint employers of Plaintiff in that each of them exercised control over the wages, hours, or working conditions of their non-exempt employees.

## VENUE AND JURISDICTION

14.    The court has jurisdiction over all causes of action in this complaint pursuant to Article VI, § 10 of the California Constitution. No federal question is at issue; Plaintiff relies solely on California statutes and law.

15.    Venue as to Defendants is proper in this Superior Court pursuant to California Code of Civil Procedure § 395. The unlawful acts alleged have directly affected Ms. Stevens in Shasta County, where she worked and earned wages as discussed herein. Finally, Business

1 & Professions Code § 17204 provides that any person acting on her own behalf may bring an
2 action in any court of competent jurisdiction. Accordingly, this Court maintains appropriate
3 jurisdiction over this dispute.

4 <center>**FACTUAL BACKGROUND**</center>

5 <center>*Ms. Stevens Excels as a Director of Sales for ExamWorks*</center>

6 16. Plaintiff was hired as an account executive in the West Coast Bill Review Busi-
7 ness Unit on May 16, 2011 and promoted to a Director of Sales approximately one year later.[1]
8 This was the only promotion she received at the Company, despite applying for numerous
9 open roles and promotions throughout her employment.

10 17. Ms. Stevens was an exceptional employee and her performance reviews are
11 consistently outstanding. She received the highest possible rounded performance score from
12 the time she was hired until her termination. Her supervisors' feedback, a sample of which
13 appears below, is glowing:

14 • In 2012, Ms. Stevens was called "a great team player, a great salesperson and does a
15 fantastic job" and "an essential part of our . . . team and success." Ms. Bartsch also
16 noted that in 2012, Ms. Stevens "provided $165K in new BR business and $38K in
17 new OPO business . . . *the largest organic increase I have seen.*"

18 • In 2013, she was described as a "a fantastic leader, salesperson, [and a] positive influ-
19 ence [who] is able to solidify client relationships in all she does." According to the
20 review, Ms. Stevens "was an integral part in our success and growth as a business
21 unit" who "helped secure over $272K in new business in 2013."

22 • In 2014, the business unit "exceeded revenue and EBITDA for the year and a large
23 part of that was due to [Plaintiff's] hard work and dedication to the . . . team."

24 • In 2015, she was described as a "great Director of Sales and Marketing . . . . She is
25 great with clients and her sales team."

26 _____

27 [1] While Plaintiff's job duties were similar to other employees with the title of "Re-
gional Vice President of Sales," she was classified as a "director of sales" and, on information
28 and belief, was paid less than similarly situated male employees.

<center>4</center>
<center><small>COMPLAINT</small></center>

- In 2016, Ms. Stevens' manager noted that she worked "closely with Joni on a daily basis and I know the depth of her dedication and how she prides herself on meeting and exceeding revenue expectations" that Ms. Stevens "continues to look for opportunities to grow the business in any [way] possible" and that she was "a great leader to her sales team."

- In 2017, Ms. Stevens exceeded her revenue goals by more than 20% and was commended for being "*well liked by the entire team and bring[ing] a joy and positivity to the work environment.*"

- In 2018, Ms. Stevens worked with a short-staffed sales team, yet nonetheless "continue[d] to meet her goal expectations. She is a great example of commitment to exceptional customer service, values, and [ExamWorks'] reputation as an industry leader. I could not ask for a better person to lead our sales team. *She is driven, motivated and constantly seeking new opportunities for our own business unit as well as EW as a whole.* She is a team player and I am thankful she is part of my leadership team."

18.     Ms. Stevens' skills were so noteworthy that other business units relied on her to call clients and persuade them to commit to larger expenditures with ExamWorks. Her supervisor noted that Ms. Stevens was "*able to talk to clients regarding large cases and secure larger invoices after discussing the benefits of the work product they will receive. Other [business units] also look to her as well to make these client calls to secure . . . cases for their unit due to her knowledge and great customer skills.*"

19.     Put differently, Ms. Stevens always excelled at her job and exceeded expectations.

### *Ms. Stevens is Repeatedly Denied Promotions in Favor of Men and Paid Less Than Her Male Colleagues*

20.     Nonetheless, Ms. Stevens was repeatedly passed up for promotions in favor of men who were part of the boy's club as part of a widespread practice of gender discrimination in upper-level promotions at the Company.

21.     From 2017 through her termination, Ms. Stevens shared her interested in mov-ing up within the Company, citing her strong track record, loyal customer relationships, and long tenure with ExamWorks. Ms. Stevens's requests were uniformly ignored. ExamWorks' management even lied to prevent Ms. Stevens from applying to available roles. Each of the positions Ms. Stevens expressed interest in was eventually filled by a male candidate.

22.     For example, in approximately 2017, Ms. Stevens learned of an open Vice Pres-ident position in another ExamWorks business unit. She promptly expressed her interest to Jim Irwin, the Vice President of Field Sales, about applying to be a VP of Field Sales in an-other ExamWorks business unit, ExamWorks Clinical Solutions. Mr. Irwin assured her that he would let her know when the position formally opened up so she could apply. But Mr. Irwin never shared the position with Ms. Stevens, and she was unable to apply. The position was filled by a younger man.

23.     Similarly, in January of 2020, ExamWorks decided to merge the West Coast and East Coast Bill Review business units and began a hiring process for a new Vice President of Operations that would oversee the two offices. ExamWorks did not post the job opening internally and did not invite or allow Ms. Stevens—or either two highly-qualified women who successfully managed the east and west coast offices for many years—to apply for the job. Instead, ExamWorks hired a man, Doug Taylor, from outside the Company for the new Vice President position.[2]

24.     Following Mr. Taylor's hire, he began a process to merge the east and west coast offices, which had previously operated independently. In the process, it became clear that Mr. Taylor had a habit of discounting opinions offered by female ExamWorks employees,

---

[2] On information and belief, Mr. Taylor was friends with David Delahanty, an Account Executive who worked with the Company's President of Sales, David Morrow, in New Jersey. On information and belief, Mr. Delahanty recommended Mr. Taylor to Mr. Morrow for the position.

1   including Plaintiff. Mr. Taylor, Mr. Morrow, and Mr. Delahanty (then the same level as Plain-
2   tiff) would often hold secret meetings that excluded Plaintiff and the two female office man-
3   agers.

4       25.    Just months later, in June 2020, Ms. Stevens applied to serve as a Director of
5   Sales for Special Services, which encompasses seven business units and would have given
6   Ms. Stevens the opportunity for increased commission. However, despite her record of per-
7   formance at ExamWorks, she received a perfunctory interview. Her interviewer, a Regional
8   Vice President of Operations, did not ask her questions and appeared disinterested and
9   bored. The Company never bothered to tell Ms. Stevens she had been passed over, and she
10  only learned the position had been filled—by a younger man—after she contacted Anna Bae,
11  ExamWorks' internal recruiter, for an update. Ms. Bae indicated that the position had been
12  filled "*weeks*" earlier. On information and belief, ExamWorks had already decided to hire the
13  male candidate from outside the company, Brendan McCafferty, for the position before Ms.
14  Stevens' interview.

15      26.    A few months later, in or around October 2020, ExamWorks hired a new Vice
16  President of Business Development Sales[3] (whom Ms. Stevens was later told to report to, as
17  discussed in more detail below). Ms. Stevens was not given an opportunity to apply for this
18  position until the final day of the application period. Mr. Morrow promoted his friend Mr.
19  Delahanty—the friend who had recommended Doug Taylor for the new Vice President po-
20  sition Ms. Stevens was not able to apply for—instead.

21      27.    On information and belief, ExamWorks' discrimination against women in in-
22  ternal promotions was not limited to Ms. Stevens, and numerous of her female co-workers
23  were also passed up for less-qualified or less-senior male colleagues or outside hires.

24      28.    But ExamWorks' discrimination against Ms. Stevens was not limited to its
25  practices relating to promotions and transfers.

26

27      [3] This position was initially advertised as a Director of Sales. However, the position
28  was re-labeled Vice President of Business Development Sales after Mr. Delahanty was hired.

COMPLAINT

1    29.    Indeed, Ms. Stevens was consistently paid less than her similarly situated male
2  peers, most of whom were younger than her and many of whom were less experienced. Ms.
3  Stevens' base salary was less than the base salary paid to men with her job title and/or re-
4  sponsibilities. On information and belief, she was paid less than lower-ranking sales employ-
5  ees, such as Account Executives.

6    30.    There was no legitimate justification for these pay disparities.

7    31.    ExamWorks unilaterally changed Ms. Stevens' compensation structure on sev-
8  eral occasions based on the perception that she was making "*too much*" in commissions (i.e.,
9  that she was too successful), despite her obvious value to the Company and consistently
10 glowing performance feedback. For instance, in or around November 2019, an ExamWorks
11 Senior Vice President, Brent Nally, told Ms. Stevens that he "*almost fell out of [his] chair*"
12 when he found out how much Ms. Stevens was compensated.

13    32.    On information and belief, Ms. Stevens' commission structure was lower than
14 the commission structure offered to her similarly situated male and younger colleagues.

15    33.    There was no legitimate justification for these pay disparities. In fact, they run
16 counter to the most basic premises of compensation for sales personnel, essentially penaliz-
17 ing Ms. Stevens for making the company more money.

18    ### *Ms. Stevens' Male Bosses Begin the Process of Icing Her Out*

19    34.    The Company's pattern of discriminatory promotions ultimately led to a sales
20 infrastructure that was dominated by Mr. Morrow and his friends, all white men, who re-
21 jected and resented the contributions of the knowledgeable female peers in their business
22 units. Ms. Stevens drew their ire for not being sufficiently conciliatory and deferential to
23 them, and they ultimately conspired to push her out of the Company.

24    35.    In January 2020, Doug Taylor was hired for the new Vice President position,
25 as discussed above. Mr. Taylor was given control of the business unit that Heather O'Connor
26 and Sarah Yu had successfully run for 11 years. Neither Ms. O'Connor nor Ms. Yu were
27 invited to interview for this position or afforded an opportunity to apply.

28

36.     Mr. Taylor began convening conference calls between Ms. Stevens, Ms. O'Connor, Ms. Yu, and Mr. Delahanty to discuss changes to the unit's services and pricing. Mr. Taylor was frequently demeaning and dismissive towards the women on these calls, talking over them and dismissing their ideas. By contrast, he frequently praised Mr. Delahanty's input, evidencing his bias against the experience and contributions of his female colleagues.

37.     Ms. Stevens continued to perform well despite this hostility. In or around March 2020, she and her female sales representative signed up a new account worth approximately $500,000. Mr. Taylor greeted this good news by moving the account to a newer, male Account Manager, meaning Ms. Stevens and her sales representative would earn fewer ongoing commissions on the account.

38.     Unbeknownst to Ms. Stevens, Mr. Taylor planned to take *all* new accounts she signed up and reallocate them to the male account manager's team. On a call with Ms. Stevens, Mr. Taylor refused to engage with Ms. Stevens about this decision, declaring that this was the "*way it was going to be*" and explained that he had "*years of experience*" in sales and "*know[s] what is best.*" Ms. Stevens responded that she, too, had years of experience in sales. Mr. Taylor cut her off, yelling, at her, and told her to "*back off.*" Mr. Taylor would not have reacted in this aggressive fashion if Ms. Stevens were male.

39.     In or around May or June 2020, the President of Sales, David Morrow, reached out to schedule a call with Ms. Stevens. Mr. Morrow indicated that he was trying to decide which "*seats were going to be available on the bus*" going forward. Ms. Stevens chose to view the call as an opportunity to share her experience and explain her qualifications for the myriad positions she was interested in and/or had been passed up for in favor of men.

40.     But Mr. Morrow would not let Ms. Stevens advocate for herself. Instead, he started the call by explaining that Mr. Taylor had called him in March after yelling at Ms. Stevens on the phone, saying that Mr. Taylor knew he had "*really screwed up.*" Mr. Morrow then launched into praise of Mr. Delahanty and Mr. Buchanan, explaining his long personal and working relationships with each of them.

41.    Ms. Stevens left the call feeling that the "*seats on the bus*" had already been determined, and the continued security of her "*seat*" required placating Mr. Morrow and his friends.

42.    Shortly after this call, Ms. Stevens learned of the Director of Sales for Special Services position, discussed in paragraph 26 above, and promptly applied. She learned from a colleague that Mr. Morrow had been angry that Ms. Stevens had the "*nerve*" to apply for the position. Of course, as noted above, Ms. Stevens was not hired for this position.

43.    In October 2020, Ms. Stevens saw a job posting for a Director of Sales role involving her business unit. She immediately became concerned that she was being fired, and called Mr. Morrow to ask if her position was being eliminated. Mr. Morrow lied to her, stating that the posted position was for "*someone to help draft and report sales numbers and projections,*" i.e., a menial role that did not have significant overlap with hers. Ms. Stevens told Mr. Morrow that she was interested in the role if it resulted in additional supervisory responsibilities, but would not apply if it were a lateral move to a more analytics-focused role. Mr. Morrow assured her of the latter.

44.    Soon after this call, Ms. Stevens learned that Mr. Morrow had hired a colleague, David Delahanty, as discussed in paragraph 27. ExamWorks then changed the job title on the position to Vice President of Business Development Sales and moved Ms. Stevens's role to under Mr. Delahanty's. As Ms. Stevens expressed to Mr. Morrow, she would have applied for the job had she known that it was a promotion.

45.    Following Mr. Delahanty's promotion, ExamWorks stripped Ms. Stevens of her job responsibilities, including managing her sales team.

### *Ms. Stevens Complains About Her Unequal Wages, Gender Discrimination, & Is Fired*

46.    On January 25, 2021, ExamWorks presented Ms. Stevens with a new commission plan,[4] which was significantly worse for her than prior agreements. ExamWorks changed

[4] In November 2020, Ms. Stevens was told that her commission structure would remain the same for 2021.

the commission rate structure, instituted a phase-out of commissions over time, and changed the commission payment structure to quarterly and yearly payouts rather than the monthly commission payments that Ms. Stevens had historically received. Ms. Stevens attempted to negotiate her compensation and sent detailed examples about how the new commission structure was unfair.

47. Several days later, Mr. Delahanty told Ms. Stevens that her attempt to stand up for herself, like her prior efforts, "*had not gone over very well*." Mr. Delahanty later told Ms. Stevens not to negotiate any further because her efforts had "*not been well received.*" ExamWorks would not have reacted this strongly to a man negotiating his wages.

48. In the end of January or early February 2021, ExamWorks hired another Director of Sales. Plaintiff was told that she would not supervise the new hire.

49. Seeing the writing on the wall, Ms. Stevens experienced increasing anxiety, sleeplessness, and other symptoms as a result of the ongoing campaign of discrimination against her. For the first time ever, Ms. Stevens made a complaint to Human Resources, telling a representative, Emily Wingo-Schneider, that she was worried that her job duties were being taken away and that she was being pushed out by the "*good boys club.*" The Human Resources representative tried to force her to get on a call—alone—with Mr. Taylor to discuss her issues with him. Ms. Stevens declined, stating that she did not want to discuss her complaint with him because of his condescending attitude.

50. Rather than intervene to help Ms. Stevens, Human Resources told her to use PTO to take a week off and calm down. She did. On information and belief, Human Resources did not use this time to investigate her complaint of discrimination. Instead, unbeknownst to Ms. Stevens, the Company decided to fire her.

51. Ms. Stevens returned to work on February 18, 2021 to an email from Mr. Morrow requesting a call with her for the following day to catch up.

52. During this phone call, Mr. Morrow told Plaintiff that the company was "*taking a different direction*" and that she was "*not a good fit.*" Ms. Stevens asked why she was no

1 longer a "*good fit.*" Emily Wingo-Schneider, the Human Resources representative present
2 on the call, discouraged this question by stating that there was "*no reason to get into the past.*"
3 Mr. Morrow then (falsely) stated that Ms. Stevens had not been making sales in January and
4 that she had been "*taking a lot of time off,*" presumably referring to the week she took for
5 mental health reasons caused by the Company's discriminatory treatment of her.

6     53.    The same day, ExamWorks sent Ms. Stevens a "termination record" stating
7 that the department was "*making changes to the operations and compensation structure within*
8 *the Sales and Marketing group*" and that Ms. Stevens had been terminated because they had
9 "*decided to go in a different direction with the position.*" ExamWorks also provided Plaintiff with
10 a severance agreement that would remain open until March 12, 2021.

11              ***ExamWorks Fraudulently Holds Out the Prospect of Another Job to***
12              ***Induce Ms. Stevens to Sign a Severance Agreement***

13     54.    Before she was fired, Ms. Stevens had applied for yet another promotion within
14 ExamWorks. The new role, Vice President of Sales, involved a different business unit within
15 the Company that concerned so-called Medicare set-asides.[5] Ms. Stevens informed Mr. De-
16 lahanty that she was applying for the position.

17     55.    Ms. Stevens had been submitted for the role by an internal recruiter and was
18 scheduled to have her interview on Monday, February 21, just days after she was fired. Her
19 interviewer, the President of Compliance Solutions, Robyn Walsh, started the interview by
20 stating that she was "*thrilled*" when she heard Ms. Stevens had applied for the role, as she
21 had heard great things from other sales staff. The interview went so well that Ms. Walsh set
22 up a second interview with her two Senior Vice Presidents for the following day. During the
23
24

25     [5] A workers' compensation medicare set-aside is a financial arrangement that allocates
a portion of a workers' compensation settlement to pay for future medical services relating
26 to the injury. *See* Workers' Compensation Medicare Set Aside Arrangements, Centers for
Medicare & Medicaid Services (Apr. 21, 2021), *available at* https://www.cms.gov/Medi-
27 care/Coordination-of-Benefits-and-Recovery/Workers-Compensation-Medicare-Set-
28 Aside-Arrangements/WCMSA-Overview (last visited May 27, 2021).

1 initial interview, Ms. Walsh indicated that Ms. Stevens' resume was the only one that they
2 had received.

3      56.    Ms. Stevens participated in the second-round interview, which went well. But
4 ExamWorks did not seriously consider Ms. Stevens' application and never called her refer-
5 ences.

6      57.    ExamWorks did, however, string Ms. Stevens along for nearly a month in hopes
7 of inducing her to sign the severance agreement releasing all claims against the Company.
8 Only on March 12—the day the agreement expired and it was clear that Ms. Stevens would
9 not accept it—did ExamWorks inform Ms. Stevens that she was not selected for the role. In
10 further insult, Ms. Walsh told Ms. Stevens that she would not be hired because the company
11 didn't want to hire the "*second best*."

12      58.    On information and belief, ExamWorks held out the possibility of another job
13 with the Company to induce Ms. Stevens to release her claims against the Company.

14 <div align="center">***Administrative Exhaustion***</div>

15      59.    Ms. Stevens obtained a Right to Sue from the DFEH on June 14, 2021.

16 <div align="center">**CAUSES OF ACTION**</div>

17 <div align="center">**FIRST CAUSE OF ACTION**</div>

18 <div align="center">**Gender Discrimination in Violation of FEHA**</div>

19 <div align="center">**Cal. Gov. Code §§ 12940, *et seq.***</div>

20 <div align="center">**(Plaintiff Against Defendants)**</div>

21      60.    Plaintiff repeats and incorporates by reference all allegations contained in the
22 preceding paragraphs as if fully set forth herein.

23      61.    The California Fair Employment and Housing Act provides that it is unlawful
24 for "an employer, because of the . . . sex . . . of any person, to . . . discharge the person from
25 employment, . . . or to discriminate against the person in compensation or in terms, condi-
26 tions, or privileges of employment." Gov. Code §§ 12940(a).

27

28

<div align="center">13</div>

62.     Defendants discriminated against Plaintiff because of her sex in violation of Government Code § 12940(a) by denying her professional opportunities, paying her less than her male colleagues for identical work, and terminating her for having the temerity to challenge these practices.

63.     Plaintiff's sex was the sole or motivating factor in Defendants' decision to take these or other adverse employment actions against her.

64.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate result of Defendants' conduct, Plaintiff continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

65.     Defendants' conduct has further caused Plaintiff to lose financial stability, peace of mind, and future security. Defendants' conduct has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

66.     Because of the conduct alleged herein, Plaintiff hired attorneys to prosecute her claims under FEHA. Accordingly, Plaintiff is entitled to recover attorneys' fees and costs pursuant to Government Code § 12965(b), in addition to other damages as provided by law.

67.     Moreover, Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard for Plaintiff's rights, entitling her to punitive damages.

### SECOND CAUSE OF ACTION
**Age Discrimination in Violation of FEHA**
**Cal. Gov. Code §§ 12940, *et seq*.**
**(Plaintiff Against Defendants)**

68.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

69. The California Fair Employment and Housing Act provides that it is unlawful for "an employer, because of the . . . age . . . of any person, to . . . discharge the person from employment, . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Gov. Code §§ 12940(a). "Age" is defined as "the chronological age of any individual who has reached his or her 40th birthday." Gov. Code §§ 12926(b).

70. At all times relevant to this complaint, Plaintiff was over 40 years old.

71. Defendants discriminated against Plaintiff because of her age in violation of Government Code § 12940(a) by denying her professional opportunities, paying her less than her younger colleagues for identical work, and terminating her for having the temerity to challenge these practices.

72. Plaintiff's age was the sole or motivating factor in Defendants' decision to take these or other adverse employment actions against her.

73. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate result of Defendants' conduct, Plaintiff continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

74. Defendants' conduct has further caused Plaintiff to lose financial stability, peace of mind, and future security. Defendants' conduct has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

75. Because of the conduct alleged herein, Plaintiff hired attorneys to prosecute her claims under FEHA. Accordingly, Plaintiff is entitled to recover attorneys' fees and costs pursuant to Government Code § 12965(b), in addition to other damages as provided by law.

1    76.    Moreover, Defendants' conduct has been intentional, deliberate, willful, mali-
2    cious, reckless, and conducted in callous disregard for Plaintiff's rights, entitling her to pu-
3    nitive damages.

### THIRD CAUSE OF ACTION

**Retaliation in Violation of FEHA**

**Cal. Gov. Code §§ 12940, *et seq.***

**(Plaintiff Against Defendants)**

8    77.    Plaintiff repeats and incorporates by reference all allegations contained in the
9    preceding paragraphs as if fully set forth herein.

10    78.    At all times relevant to this complaint, Plaintiff was an applicant for employ-
11    ment or an employee and was covered by FEHA.

12    79.    The California Fair Employment and Housing Act provides that it is unlawful
13    for "an employer to discharge, expel, or otherwise discriminate against any person because
14    the person has opposed any practices forbidden under this part or because the person has
15    filed a complaint, testified, or assisted in any proceeding under this part." Gov. Code
16    §§ 12940(h).

17    80.    Ms. Stevens was unlawfully retaliated against for opposing ExamWorks' dis-
18    criminatory efforts to reduce her pay and for telling HR that she was concerned that the
19    "good old boys club" was pushing her out of her position. Ms. Stevens was terminated within
20    two weeks of making her complaint to HR.

21    81.    Ms. Stevens' complaints were the sole or motivating reasons in ExamWorks'
22    decision to terminate her.

23    82.    As a proximate result Defendants' conduct, Plaintiff has suffered special dam-
24    ages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount sub-
25    ject to proof at trial. As further direct and proximate result of Defendants' conduct, Plaintiff
26    continues to suffer damages in the form of lost future earnings, benefits, and/or other pro-
27    spective damages in an amount to be proven at trial.

28

83. Defendants' conduct has further caused Plaintiff to lose financial stability, peace of mind, and future security, and has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

84. Because of the conduct alleged herein, Plaintiff hired attorneys to prosecute her claims under FEHA. Accordingly, she is entitled to recover reasonable attorneys' fees and costs pursuant to Government Code section 12965(b), in addition to other damages as provided by law.

85. Moreover, Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard for Plaintiffs' rights, entitling her to punitive damages.

## FOURTH CAUSE OF ACTION

### Failure to Prevent Harassment and Discrimination

### Cal. Gov. Code §§ 12940, *et seq.*

### (Plaintiff Against Defendants)

86. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

87. Under FEHA, employers have an affirmative obligation "to take all reasonable steps necessary to prevent harassment from occurring." Gov. Code § 12940(k). In addition to taking protective and corrective action, an employer is expressly forbidden from retaliating against an employee who complains of a FEHA violation. Gov. Code § 12940. Retaliation is any "adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 91 (2017).

88. At all times relevant to this complaint, Plaintiff was an applicant for employment or an employee of Defendants and was covered by FEHA.

1     89.    Defendants owed Plaintiff a duty of care pursuant to Government Code
2 § 12940(k).

3     90.    Plaintiff suffered from discrimination and retaliation at the hands of Defend-
4 ants throughout her employment. Plaintiff's supervisors were aware of this discrimination,
5 but did nothing to stop it. Further, when Plaintiff complained about this conduct to Human
6 Resources, Defendants *still* did not take any efforts to protect Plaintiff, instead wrongfully
7 terminating her.

8     91.    Defendants failed to take all or any reasonable steps necessary to prevent the
9 harassment. Specifically, Defendants breached their duty of care to Plaintiff by (1) failing to
10 act upon observed discrimination; and (2) failing to act in response to Plaintiff's complaint
11 about the discrimination, (3) and retaliating against Plaintiff for complaining.

12     92.    As a proximate result of Defendants' conduct, Plaintiff has suffered special
13 damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount
14 subject to proof at trial. As further direct and proximate results of Defendants' conduct,
15 Plaintiff continues to suffer damages in the form of lost future earnings, benefits, and/or
16 other prospective damages in an amount to be proven at trial.

17     93.    Defendants' conduct has further caused Plaintiff to lose financial stability,
18 peace of mind, and future security, and has caused her severe embarrassment, humiliation,
19 and mental and emotional distress and discomfort in an amount not fully ascertained but
20 subject to proof at trial.

21     94.    Because of the conduct alleged herein, Plaintiff hired attorneys to prosecute
22 her claims under FEHA. Accordingly, Plaintiff is entitled to recover attorneys' fees and costs
23 pursuant to Government Code § 12965(b), in addition to other damages as provided by law.

24     95.    Moreover, Defendants' conduct has been intentional, deliberate, willful, mali-
25 cious, reckless, and conducted in callous disregard for Plaintiff's rights, entitling her to pu-
26 nitive damages.

27

28

## FIFTH CAUSE OF ACTION

### Violation of California Equal Pay Act

### Lab. Code § 1197.5

### (Plaintiff Against Defendants)

96.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

97.     Labor Code section 1197.5(a) provides that "[a]n employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex for substantially similar work." Lab. Code § 1197.5(a).

98.     There is no intent requirement; it is sufficient to show that an employee was paid less than employees of other races who occupied comparable positions. *Green v. Par Pools, Inc.*, 111 Cal. App. 4th 620, 629 (2003). Further, "prior salary shall not, by itself, justify any disparity in compensation." Lab. Code § 1197.5(b)(3); *Rizo v. Yonivo*, No. 16-15372 (Ninth Circuit Feb. 27, 2020).

99.     Employers who fail to pay employees at wage rates less than employees of genders for substantially similar positions are liable for the amount of wages unlawfully withheld plus an equal amount as liquidated damages, interest, addition to attorneys' fees, and costs of suit. Lab. Code § 1197.5(c).

100.    Plaintiff is a woman who was paid wages lower than those paid to male employees of similar qualifications, seniority, and experience and who performed similar job duties.

101.    Defendants have no legal justification for their discriminatory pay practices.

102.    Accordingly, Defendants are liable for the amount of wages unlawfully withheld plus an equal amount as liquidated damages, interest, addition to attorneys' fees, and costs of suit. Lab. Code § 1197.5(c).

**SIXTH CAUSE OF ACTION**

**Retaliation in Violation of California Equal Pay Act**

**Lab. Code § 1197.5**

**(Plaintiff Against Defendants)**

103.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

104.    Labor Code section 1197.5(k) provides that "An employer shall not discharge, or in any manner discriminate or retaliate against, any employee by reason of any action taken by the employee to invoke or assist in any manner the enforcement of this section.

105.    Following ExamWorks' attempt to further reduce Ms. Stevens' commission structure and increase the pay disparity between her and her male colleagues, Ms. Stevens attempted to negotiate a more equal pay structure.

106.    Ms. Stevens' advocacy for more equal pay was the sole or substantially motivating reason behind ExamWorks' decision to terminate her.

107.    Ms. Stevens was harmed through her termination and ExamWorks' retaliation was a substantial factor in causing her harm.

108.    As a proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate results of Defendants' conduct, Plaintiff continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**Retaliation in Violation of Labor Code Section 1102.5**

**(Plaintiff Against Defendants)**

109.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

1    110.   Labor Code § 1102.5 provides that an employer, or anyone acting on their be-
2  half, shall not retaliate against an employee for disclosing information to a government or law
3  enforcement agency that the employee has reasonable cause to believe constitutes a violation
4  of law.

5    111.   Plaintiff was subjected to an adverse employment action when she was termi-
6  nated by Defendants. The stated reasons for Plaintiff's termination were purely pretextual
7  and designed to cover the fact that Defendants terminated Plaintiff for making protected
8  complaints about gender discrimination and pay disparity.

9    112.   Plaintiff's termination was causally related to her many protected reports.

10    113.   As a proximate result of Defendants' conduct, Plaintiff has suffered special
11  damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount
12  subject to proof at trial. As further direct and proximate result of Defendants' conduct, Plain-
13  tiff continues to suffer damages in the form of lost future earnings, benefits, and/or other
14  prospective damages in an amount to be proven at trial.

15    114.   Defendants' conduct has further caused Plaintiff to lose financial stability,
16  peace of mind, and future security, and has caused her severe embarrassment, humiliation,
17  and mental and emotional distress and discomfort in an amount not fully ascertained by sub-
18  ject to proof at trial.

19    115.   Moreover, Defendants' conduct has been intentional, deliberate, willful, mali-
20  cious, reckless, and/or conducted in callous disregard for Plaintiff's rights, entitling her to
21  punitive damages.

22    116.   Plaintiff further seeks backpay, the value of lost benefits, reasonable attorney's
23  fees, and a civil penalty as authorized by statute.

24

25

26

27

28

**EIGHTH CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy**

**(Plaintiff Against Defendants)**

117.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

118.    California law expresses a well-established, substantial, and fundamental public policy of protecting employees from harassment or discrimination on the basis of their sex. California law also expresses a well-established, substantial, and fundamental public policy of protecting employees from retaliation for complaining about discrimination based on sex.

119.    Plaintiff's termination was causally related to her protected complaints about gender-based discrimination.

120.    As a proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate result of Defendants' conduct, Plaintiff continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

121.    Defendants' conduct has further caused Plaintiff to lose financial stability, peace of mind, and future security, and has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained by subject to proof at trial.

122.    Moreover, Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard for Plaintiff's rights, entitling her to punitive damages.

## NINTH CAUSE OF ACTION

### Unlawful Business Practices
### California Business & Professions Code §§ 17200, *et seq.*

### (Plaintiff Against Defendants)

123. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

124. Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies and associations.

125. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff and to the general public. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

126. Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq.* A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law. In the instant case, Defendants' policies and practices have violated state law as described above.

127. As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses. Plaintiff has suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

128. Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiff is entitled to restitution of the wages withheld and retained by Defendant during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendant to cease discriminating against female and/or older employees; and

1 | an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5
2 | and other applicable laws.

3 | ### DEMAND FOR JURY TRIAL

4 | Pursuant to California Code of Civil Procedure § 631, Plaintiffs demand a trial by jury
5 | on all issues so triable.

6 | ### PRAYER FOR RELIEF

7 | WHEREFORE, Plaintiff respectfully pray for judgment as follows:

8 | A.     For actual and special damages according to proof at trial;

9 | B.     For statutory and civil penalties, according to proof at trial;

10 | C.     For punitive and exemplary damages according to proof at trial;

11 | D.     For pre- and post-judgment interest on monetary damages;

12 | E.     For reasonable attorney's fees and costs and expert fees and costs as allowed
13 | by law; and

14 | F.     For such other relief as this Court deems just and proper.

Dated:     June 14, 2021

Respectfully submitted,
KING & SIEGEL LLP

By: _Julian Burns King_
Julian Burns King
Attorneys for Plaintiff Joni Stevens

24

COMPLAINT

# Exhibit A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency         GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

KEVIN KISH, DIRECTOR

June 14, 2021

Robert King
724 S. Spring Street
Los Angeles, California 90013

RE:  **Notice to Complainant's Attorney**
DFEH Matter Number: 202106-13865914
Right to Sue: Stevens / ExamWorks LLC et al.

Dear Robert King:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                     KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

June 14, 2021

RE:  **Notice of Filing of Discrimination Complaint**
     DFEH Matter Number: 202106-13865914
     Right to Sue: Stevens / ExamWorks LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

June 14, 2021

Joni Stevens
5775
Fagan Drive, California 96001

RE:     **Notice of Case Closure and Right to Sue**
         DFEH Matter Number: 202106-13865914
         Right to Sue: Stevens / ExamWorks LLC et al.

Dear Joni Stevens:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective June 14, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete. To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Joni Stevens                                           DFEH No. 202106-13865914

                          Complainant,

vs.

ExamWorks LLC
3280 Peachtree Road NE, Suite 2625
Atlanta, Georgia 30305

IME Resources, LLC
3280 Peachtree Road NE, Suite 2625
Atlanta, Georgia 30305

ExamWorks Review Services, LLC
1100 Industrial Street
Redding, California 96002

                          Respondents

_____

**1. Respondent ExamWorks LLC** is an **employer ExamWorks LLC** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant is naming **IME Resources, LLC** business as Co-Respondent(s).
Complainant is naming **ExamWorks Review Services, LLC** business as Co-Respondent(s).

**3.** Complainant **Joni Stevens**, resides in the City of **Fagan Drive**, State of **California.**

**4.** Complainant alleges that on or about **June 14, 2021**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's sex/gender, gender identity or expression, age (40 and over) and as a result of the discrimination was terminated, denied hire or promotion, denied equal pay, denied any employment benefit or privilege, denied work opportunities or assignments.

-1-
*Complaint – DFEH No. 202106-13865914*

Date Filed: June 14, 2021

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, denied any employment benefit or privilege.

**Additional Complaint Details:** Plaintiff was hired as an account executive in the West Coast Bill Review Business Unit on May 16, 2011 and promoted to a Director of Sales approximately one year later. This was the only promotion she received at the Company, despite applying for numerous open roles and promotions throughout her employment. Ms. Stevens was an exceptional employee and her performance reviews are consistently outstanding. She received the highest possible rounded performance score from the time she was hired until her termination.

Ms. Stevens's skills were so noteworthy that other business units relied on her to call clients and persuade them to commit to larger expenditures with ExamWorks. Her supervisor noted that Ms. Stevens was "able to talk to clients regarding large cases and secure larger invoices after discussing the benefits of the work product they will receive. Other [business units] also look to her as well to make these client calls to secure . . . cases for their unit due to her knowledge and great customer skills." Put differently, Ms. Stevens always excelled at her job and exceeded expectations.

Nonetheless, Ms. Stevens was repeatedly passed up for promotions in favor of men who were part of the boy's club as part of a widespread practice of gender discrimination in upper-level promotions at the Company.

From 2017 through her termination, Ms. Stevens shared her interested in moving up within the Company, citing her strong track record, loyal customer relationships, and long tenure with ExamWorks. Ms. Stevens's requests were uniformly ignored. ExamWorks's management even lied to prevent Ms. Stevens from applying to available roles. Each of the positions Ms. Stevens expressed interest in was eventually filled by a male candidate.

For example, in approximately 2017, Ms. Stevens learned of an open Vice President position in another ExamWorks business unit. She promptly expressed her interest to Jim Irwin, the Vice President of Field Sales, about applying to be a VP of Field Sales in another ExamWorks business unit, ExamWorks Clinical Solutions. Mr. Irwin assured her that he would let her know when the position formally opened up so she could apply. But Mr. Irwin never shared the position with Ms. Stevens, and she was unable to apply. The position was filled by a younger man.

Similarly, in January of 2020, ExamWorks decided to merge the West Coast and East Coast Bill Review business units and began a hiring process for a new Vice President of Operations that would oversee the two offices. ExamWorks did not post the job opening internally and did not invite or allow Ms. Stevens—or either two highly-qualified women who successfully managed the east and west coast offices for many years—to apply for the job. Instead, ExamWorks hired a man, Doug Taylor, from outside the Company for the new Vice President position.

Following Mr. Taylor's hire, he began a process to merge the east and west coast offices, which had previously operated independently. In the process, it became clear that Mr. Taylor had a habit of discounting opinions offered by female ExamWorks employees, including Plaintiff. Mr. Taylor, Mr. Morrow, and Mr. Delahanty (then the same level as Plaintiff) would often hold secret meetings that excluded Plaintiff and the two female office managers.

-2-
*Complaint – DFEH No. 202106-13865914*

Date Filed: June 14, 2021

Just months later, in June 2020, Ms. Stevens applied to serve as a Director of Sales for Special Services, which encompasses seven business units and would have given Ms. Stevens the opportunity for increased commission. However, despite her record of performance at ExamWorks, she received a perfunctory interview. Her interviewer, a Regional Vice President of Operations, did not ask her questions and appeared disinterested and bored. The Company never bothered to tell Ms. Stevens she had been passed over, and she only learned the position had been filled—by a younger man—after she contacted Anna Bae, ExamWorks's internal recruiter, for an update. Ms. Bae indicated that the position had been filled "weeks" earlier. On information and belief, ExamWorks had already decided to hire the male candidate from outside the company, Brendan McCafferty, for the position before Ms. Stevens's interview.

A few months later, in or around October 2020, ExamWorks hired a new Vice President of Business Development Sales (whom Ms. Stevens was later told to report to, as discussed in more detail below). Ms. Stevens was not given an opportunity to apply for this position until the final day of the application period. Mr. Morrow promoted his friend Mr. Delahanty—the friend who had recommended Doug Taylor for the new Vice President position Ms. Stevens was not able to apply for—instead. This position was initially advertised as a Director of Sales. However, the position was re-labeled Vice President of Business Development Sales after Mr. Delahanty was hired.

On information and belief, ExamWorks's discrimination against women in internal promotions was not limited to Ms. Stevens, and numerous of her female co-workers were also passed up for less-qualified or less-senior male colleagues or outside hires.

But ExamWorks's discrimination against Ms. Stevens was not limited to its practices relating to promotions and transfers. Indeed, Ms. Stevens was consistently paid less than her similarly situated male peers, most of whom were younger than her and many of whom were less experienced. While Plaintiff's job duties were similar to other employees with the title of "Regional Vice President of Sales," she was classified as a "director of sales" and, on information and belief, was paid less than similarly situated male employees. Ms. Stevens's base salary was less than the base salary paid to men with her job title and/or responsibilities. On information and belief, she was paid less than lower-ranking sales employees, such as Account Executives. There was no legitimate justification for these pay disparities.

ExamWorks unilaterally changed Ms. Stevens's compensation structure on several occasions based on the perception that she was making "too much" in commissions (i.e., that she was too successful), despite her obvious value to the Company and consistently glowing performance feedback. For instance, in or around November 2019, an ExamWorks Senior Vice President, Brent Nally, told Ms. Stevens that he "almost fell out of [his] chair" when he found out how much Ms. Stevens was compensated. On information and belief, Ms. Stevens' commission structure was lower than the commission structure offered to her similarly situated male and younger colleagues. There was no legitimate justification for these pay disparities. In fact, they run counter to the most basic premises of compensation for sales personnel, essentially penalizing Ms. Stevens for making the company more money.

The Company's pattern of discriminatory promotions ultimately led to a sales infrastructure that was dominated by Mr. Morrow and his friends, all white men, who rejected and resented the contributions of the knowledgeable female peers in their business units. Ms. Stevens

-3-

Date Filed: June 14, 2021

1   drew their ire for not being sufficiently conciliatory and deferential to them, and they
    ultimately conspired to push her out of the Company.

2   In January 2020, Doug Taylor was hired for the new Vice President position, as discussed
    above. Mr. Taylor was given control of the business unit that Heather O'Connor and Sarah

3   Yu had successfully run for 11 years. Neither Ms. O'Connor nor Ms. Yu were invited to
    interview for this position or afforded an opportunity to apply. Mr. Taylor began convening

4   conference calls between Ms. Stevens, Ms. O'Connor, Ms. Yu, and Mr. Delahanty to discuss
    changes to the unit's services and pricing. Mr. Taylor was frequently demeaning and

5   dismissive towards the women on these calls, talking over them and dismissing their ideas.
    By contrast, he frequently praised Mr. Delahanty's input, evidencing his bias against the

6   experience and contributions of his female colleagues.

7   Ms. Stevens continued to perform well despite this hostility. In or around March 2020, she
    and her female sales representative signed up a new account worth approximately

8   $500,000. Mr. Taylor greeted this good news by moving the account to a newer, male
    Account Manager, meaning Ms. Stevens and her sales representative would earn fewer

9   ongoing commissions on the account.

10  Unbeknownst to Ms. Stevens, Mr. Taylor planned to take all new accounts she signed up
    and reallocate them to the male account manager's team. On a call with Ms. Stevens, Mr.
    Taylor refused to engage with Ms. Stevens about this decision, declaring that this was the

11  "way it was going to be" and explained that he had "years of experience" in sales and
    "know[s] what is best." Ms. Stevens responded that she, too, had years of experience in

12  sales. Mr. Taylor cut her off, yelling, at her, and told her to "back off." Mr. Taylor would not
    have reacted in this aggressive fashion if Ms. Stevens were male.

13  In or around May or June 2020, the President of Sales, David Morrow, reached out to
    schedule a call with Ms. Stevens. Mr. Morrow indicated that he was trying to decide which

14  "seats were going to be available on the bus" going forward. Ms. Stevens chose to view the
    call as an opportunity to share her experience and explain her qualifications for the myriad

15  positions she was interested in and/or had been passed up for in favor of men.

16  But Mr. Morrow would not let Ms. Stevens advocate for herself. Instead, he started the call
    by explaining that Mr. Taylor had called him in March after yelling at Ms. Stevens on the

17  phone, saying that Mr. Taylor knew he had "really screwed up." Mr. Morrow then launched
    into praise of Mr. Delahanty and Mr. Buchanan, explaining his long personal and working

18  relationships with each of them.

    Ms. Stevens left the call feeling that the "seats on the bus" had already been determined,

19  and the continued security of her "seat" required placating Mr. Morrow and his friends.
    Shortly after this call, Ms. Stevens learned of the Director of Sales for Special Services

20  position, discussed in paragraph 26 above, and promptly applied. She learned from a
    colleague that Mr. Morrow had been angry that Ms. Stevens had the "nerve" to apply for the

21  position. Of course, as noted above, Ms. Stevens was not hired for this position.

22  In October 2020, Ms. Stevens saw a job posting for a Director of Sales role involving her
    business unit. She immediately became concerned that she was being fired, and called Mr.

23  Morrow to ask if her position was being eliminated. Mr. Morrow lied to her, stating that the
    posted position was for "someone to help draft and report sales numbers and projections,"

24  i.e., a menial role that did not have significant overlap with hers. Ms. Stevens told Mr.
    Morrow that she was interested in the role if it resulted in additional supervisory

25  responsibilities, but would not apply if it were a lateral move to a more analytics-focused
    role. Mr. Morrow assured her of the latter.

26

27                                      -4-

28  Date Filed: June 14, 2021

1 Soon after this call, Ms. Stevens learned that Mr. Morrow had hired a colleague, David
Delahanty, as discussed in paragraph 27. ExamWorks then changed the job title on the
2 position to Vice President of Business Development Sales and moved Ms. Stevens's role to
under Mr. Delahanty's. As Ms. Stevens expressed to Mr. Morrow, she would have applied
3 for the job had she known that it was a promotion. Following Mr. Delahanty's promotion,
ExamWorks stripped Ms. Stevens of her job responsibilities, including managing her sales
4 team.

5 On January 25, 2021, ExamWorks presented Ms. Stevens with a new commission plan,
which was significantly worse for her than prior agreements. ExamWorks changed the
6 commission rate structure, instituted a phase-out of commissions over time, and changed
the commission payment structure to quarterly and yearly payouts rather than the monthly
7 commission payments that Ms. Stevens had historically received. Ms. Stevens attempted to
negotiate her compensation and sent detailed examples about how the new commission
8 structure was unfair.

9 Several days later, Mr. Delahanty told Ms. Stevens that her attempt to stand up for herself,
like her prior efforts, "had not gone over very well." Mr. Delahanty later told Ms. Stevens not
10 to negotiate any further because her efforts had "not been well received." ExamWorks would
not have reacted this strongly to a man negotiating his wages. In the end of January or early
11 February 2021, ExamWorks hired another Director of Sales. Plaintiff was told that she would
not supervise the new hire.

12 Seeing the writing on the wall, Ms. Stevens experienced increasing anxiety, sleeplessness,
and other symptoms as a result of the ongoing campaign of discrimination against her. For
13 the first time ever, Ms. Stevens made a complaint to Human Resources, telling a
representative, Emily Wingo-Schneider, that she was worried that her job duties were being
14 taken away and that she was being pushed out by the "good boys club." The Human
Resources representative tried to force her to get on a call—alone—with Mr. Taylor to
15 discuss her issues with him. Ms. Stevens declined, stating that she did not want to discuss
her complaint with him because of his condescending attitude.

16 Rather than intervene to help Ms. Stevens, Human Resources told her to use PTO to take a
week off and calm down. She did. On information and belief, Human Resources did not use
17 this time to investigate her complaint of discrimination. Instead, unbeknownst to Ms.
Stevens, the Company decided to fire her.

18 Ms. Stevens returned to work on February 18, 2021 to an email from Mr. Morrow requesting
a call with her for the following day to catch up. During this phone call, Mr. Morrow told
19 Plaintiff that the company was "taking a different direction" and that she was "not a good fit."
Ms. Stevens asked why she was no longer a "good fit." Emily Wingo-Schneider, the Human
20 Resources representative present on the call, discouraged this question by stating that there
was "no reason to get into the past." Mr. Morrow then (falsely) stated that Ms. Stevens had
21 not been making sales in January and that she had been "taking a lot of time off,"
presumably referring to the week she took for mental health reasons caused by the
22 Company's discriminatory treatment of her.

23 The same day, ExamWorks sent Ms. Stevens a "termination record" stating that the
department was "making changes to the operations and compensation structure within the
24 Sales and Marketing group" and that Ms. Stevens had been terminated because they had
"decided to go in a different direction with the position." ExamWorks also provided Plaintiff
25 with a severance agreement that would remain open until March 12, 2021.

26

27

28

Date Filed: June 14, 2021

Before she was fired, Ms. Stevens had applied for yet another promotion within ExamWorks. The new role, Vice President of Sales, involved a different business unit within the Company that concerned so-called Medicare set-asides. Ms. Stevens informed Mr. Delahanty that she was applying for the position.

Ms. Stevens had been submitted for the role by an internal recruiter and was scheduled to have her interview on Monday, February 21, just days after she was fired. Her interviewer, the President of Compliance Solutions, Robyn Walsh, started the interview by stating that she was "thrilled" when she heard Ms. Stevens had applied for the role, as she had heard great things from other sales staff. The interview went so well that Ms. Walsh set up a second interview with her two Senior Vice Presidents for the following day. During the initial interview, Ms. Walsh indicated that Ms. Stevens's resume was the only one that they had received. Ms. Stevens participated in the second-round interview, which went well. But ExamWorks did not seriously consider Ms. Stevens's application and never called her references.

ExamWorks did, however, string Ms. Stevens along for nearly a month in hopes of inducing her to sign the severance agreement releasing all claims against the Company. Only on March 12—the day the agreement expired and it was clear that Ms. Stevens would not accept it—did ExamWorks inform Ms. Stevens that she was not selected for the role. In further insult, Ms. Walsh told Ms. Stevens that she would not be hired because the company didn't want to hire the "second best." On information and belief, ExamWorks held out the possibility of another job with the Company to induce Ms. Stevens to release her claims against the Company.

Date Filed: June 14, 2021

VERIFICATION

I, **Robert King**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On June 14, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, CA**

-7-
*Complaint – DFEH No. 202106-13865914*

Date Filed: June 14, 2021

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SHASTA

CASE NO.: **1 9 7 5 4 9**

NOTICE OF 1) ALL PURPOSE ASSIGNMENT,
2) MANDATORY SETTLEMENT
CONFERENCE AND 3) TRIAL

# INSTRUCTIONS – READ IMMEDIATELY!

### ORDER OF ASSIGNMENT

This action is assigned to the ☒ Hon. Stephen H. Baker / ☐ Hon. Tamara L. Wood for all purposes pursuant to Local Rule 3.02 of the Shasta County Superior Court.

### MANDATORY SETTLEMENT CONFERENCE DATE

A Mandatory Settlement Conference will be conducted in this action on Monday/Tuesday **3/22/2022** at 1:30 p.m. in Department ☒ 3 / ☐ 8, located at 1500 Court Street, Redding, California 96001. All parties to this action are required to appear at the Settlement Conference.

The parties are ordered to comply with California Rules of Court, Rule 3.1380 relating to settlement conferences. Pursuant to Rule 3.1380(b), this court finds good cause is deemed to have been shown to excuse from attendance at settlement conference claims persons whose offices are more than 100 miles from the courthouse.

### TRIAL DATE

This matter is set for Trial on Tuesday/Wednesday, at 8:45 a.m. in Department ☒ 3 / ☐ 8, located at 1500 Court Street, Redding, CA 96001.

### REQUIREMENT FOR SERVING THIS NOTICE

Plaintiff shall serve this notice on each defendant at the time of service of the complaint and on all intervenors and interpleaders within 10 days of service on plaintiff of complaints in intervention or interpleader. All cross-complainants shall serve this notice on each cross-defendant at the time of service of the cross-complaint.

IF YOU ARE A DEFENDANT OR CROSS-DEFENDANT, YOU HAVE BEEN SERVED WITH OTHER DOCUMENTS ALONG WITH THIS NOTICE. UNDER THE LAW, THOSE OTHER DOCUMENTS REQUIRE YOU TO TAKE ACTION PROMPTLY TO PRESERVE YOUR RIGHTS. PLEASE REVIEW THOSE MATERIALS IMMEDIATELY. THE REQUIREMENTS SET FORTH IN THIS NOTICE AND THE SETTLEMENT CONFERENCE AND TRIAL DATE SCHEDULED IN THIS NOTICE ARE SEPARATE AND ARE IN ADDITION TO THOSE CONTAINED IN THE OTHER DOCUMENTS WHICH YOU HAVE RECEIVED.

Dated: January 1, 2021

Monique D. McKee, Presiding Judge

I CERTIFY THAT A COPY OF THIS DOCUMENT WAS PROVIDED TO THE PLAINTIFF ON _____ BY: _____, DEPUTY CLERK

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA**
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. Private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. You can read more information about these ADR processes and watch videos that demonstrate them at http://www.courts.ca.gov/programs-adr.htm . If the parties agree to an ADR program, the parties may file the agreement with the court for the purpose of assisting the court in determining how to proceed at the case management conference.

**Potential Advantages and Disadvantages**

ADR may have a variety of advantages and disadvantages over a trial, depending on the type of ADR process used and the particular case:

    **Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships.

    **Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable.

**Most Common Types of ADR**

**Mediation** – A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners.

**Settlement Conferences** – A judge helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Neutral Evaluation** – The parties briefly and informally present their facts and arguments to a neutral person called an "evaluator", who is often an expert in the subject matter of the dispute. The evaluator does not decide the outcome of the dispute, but helps the parties to do so by giving them a non-binding opinion about the strengths, weaknesses, and likely outcome of their case. Depending on the neutral evaluation program and the parties' wishes, the evaluator may then help the parties try to negotiate a settlement. Neutral evaluation may be appropriate if the parties want a neutral person's opinion about how

Information Sheet
Shasta County Superior Court
LF-CIV-103  [rev March 28, 2013]

**ALTERNATIVE DISPUTE RESOLUTION**
**(ADR) INFORMATION PACKAGE**

Page 1 of 2

the case might be resolved, if the primary dispute is the amount of damages, or if there are technical issues that the parties would like a neutral expert to help resolve.

**Arbitration** – The parties present evidence and arguments to a neutral person called an "arbitrator" who then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration*, they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration*, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time and expense of a trial, or want an expert in the subject matter of the dispute to make the decision.

## Selecting an ADR Program and Neutral

Selecting an ADR program and neutral are important decisions. Be sure to learn about the rules of any program and the qualifications of any neutral you are considering, and about their fees.

## Shasta County Superior Court ADR Programs

When a civil case is set for trial the judge also will set a settlement conference date approximately six weeks before the trial date. The judge assigned to the case will assist the parties in attempting to arrive at a negotiated resolution.

Shasta County Superior Court does not offer mediation, neutral evaluations, or arbitrations.

**Private ADR Providers** – To find a private ADR program or neutral evaluator, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or the Shasta-Trinity Counties Bar Association may assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California Courts website at http://courts.ca.gov/selfhelp.htm .

Information Sheet
Shasta County Superior Court
LF-CIV-103  [rev March 28, 2013]

**ALTERNATIVE DISPUTE RESOLUTION
(ADR) INFORMATION PACKAGE**

Page 2 of 2

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Julian Burns King (298617); Robert J. King (302545)<br>KING & SIEGEL LLP<br>724 S. Spring Street, Suite 201, Los Angeles, CA 90014<br>TELEPHONE NO.: (213) 465-4802     FAX NO.: (213) 465-4803<br>ATTORNEY FOR *(Name):* Plaintiff Joni Stevens | **FOR COURT USE ONLY**<br><br>**FILED**<br><br>JUN 14 2021<br><br>CLERK OF THE SUPERIOR COURT<br>BY: B. PACKHAM, DEPUTY CLERK |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SHASTA
STREET ADDRESS: 1500 Court Street
MAILING ADDRESS: 1500 Court Street
CITY AND ZIP CODE: Redding, CA 96001
BRANCH NAME: Main Courthouse

CASE NAME:
Stevens v. ExamWorks, LLC, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: 197549 |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify):* 9
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 6/14/21

Julian Burns King
(TYPE OR PRINT NAME)         *(signature)*         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2